USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/2/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                       :

COURTNEY BUCKLEY,                                  :

                                Plaintiff,                    :           17-CV-0224 (JMF)
          -v-                                                  :
                                                          :          MEMORANDUM OPINION
CITY OF NEW YORK et al.,                       :             AND ORDER

                                Defendants.                :

------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      In this case, Plaintiff Courtney Buckley brings First Amendment retaliation claims against the City of New York (the "City"), the New York City Police Department ("NYPD"), and the New York City Department of Correction ("DOC"). Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Buckley's claims. To state a claim, Buckley must, at a minimum, plausibly allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right," *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001), or caused him to suffer some other concrete harm, *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (per curiam); *see also, e.g.*, *Soundview Assocs. v. Town of Riverhead*, 725 F. Supp. 2d 320, 340-41 (E.D.N.Y. 2010) (applying the *Curley* test to a claim brought under the First Amendment Petition Clause).[1] To establish causation, the second element, Buckley must show a connection "sufficient to

---

[1]     Defendants contend that Buckley's claims should be evaluated under a higher standard applicable to public employees, (Docket No. 13, at 5-8), but the Court need not and does not address that contention.

warrant the inference that the" activity protected by the First Amendment "was a substantial motivating factor in the adverse employment action." *Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 251 (2d Cir. 2006); *accord Tucio Dev., Inc. v. Miller*, 423 F. App'x 26, 27 (2d Cir. 2011) (summary order) (affirming a district court decision finding that a plaintiff's protected speech was not a substantial or motivating factor in the defendants' adverse decision).

Applying these standards, Buckley fails to allege a plausible First Amendment retaliation claim because he alleges no facts that could support an inference of causation. Notably, his complaint includes only two paragraphs relating to causation. In the first, he alleges that the NYPD sent him a letter dated March 13, 2015, "stating that he was disqualified from serving as a police officer. The NYPD determined he was not fit to be a police officer because he had previously filed a lawsuit against them. . . . The NYPD simply concluded that a person that files a lawsuit against it is not eligible to become a police officer." (Docket No. 2 ("Compl.") ¶ 24).[2] In the second, he alleges similarly that the DOC sent him a letter dated February 9, 2016, "stating that he was disqualified from serving as a corrections officer. The DOC also decided that his prior lawsuit should disqualify him from serving as a police officer or corrections officer." (*Id.* ¶ 27). To the extent that these paragraphs can be read to allege that the NYPD and DOC expressly cited Buckley's lawsuit against the NYPD as the reason for denying him employment, they might well suffice to establish that Defendants' decisions "were motivated or substantially caused by" activity protected under the First Amendment. *Curley*, 268 F.3d at 73.

The problem for Buckley is that the letters themselves — which are incorporated by reference in his Complaint and thus may be considered here, *see, e.g.*, *N.Y. Pet Welfare Ass'n v.*

---

[2] There are two sets of paragraphs numbered 22 through 26 in Buckley's Complaint. The paragraphs cited herein refer to those on page 6 of the Complaint.

2

*City of N.Y.*, 850 F.3d 79, 86 (2d Cir. 2017) — contradict any such allegations. The letters from the NYPD (there are two) stated only that the agency had made a "determination" that Buckley was "not psychologically suited to the unique demands and stresses of employment as a Police Officer" and listed the psychological factors considered in making such determinations — none of which related to an applicant's litigation history. (Docket No. 24 ("Gammons Aff."), at 3; *see also* Docket No. 20-1 ("DOC Letter"), at 5 (noting that Buckley had reported to the DOC that the primary reason for his disqualification by the NYPD was "poor credibility," a finding that was "maybe" attributable to his "not remembering certain things" about a prior arrest)). Meanwhile, the February 9, 2016 letter from the DOC advised Buckley that its Pre-Employment Psychological Services Unit (the "Psychology Unit") had made a preliminary determination that he was psychologically not qualified for the job of corrections officer "based on the evaluation of [his] psychological tests and interview, which found personality traits incompatible with the unique demands of the position." (*See* DOC Letter 1). The Psychology Unit elaborated that the "primary basis" for its determination was its conclusion that Buckley lacked integrity, a trait that "[i]nvolves maintaining high standards of personal conduct, including being honest, impartial, and trustworthy; abiding by laws, regulations, and procedures; and not abusing the system or one's position for personal gain." (*Id.* at 3).

It is true, as Buckley notes, (Docket No. 20, at 7, 9), that the Psychology Unit's Report makes passing reference to his lawsuit against the NYPD. (DOC Letter 6). But Buckley conspicuously ignores the multitude of other reasons set forth in the Psychology Unit's Report for why he was found to be unqualified for the position of corrections officer. As the "Determination" Section of the Report states:

> At present, and considering all available data, there are significant and/or compelling concerns that rise to a level of a psychological liability for this

3

> position. These concerns . . . stem from behavioral evidence related to **integrity** and **judgment**, which have manifested across areas of this candidate's functioning. . . .
>
> . . .
>
> The candidate has evidenced a pervasive pattern of **poor integrity** in multiple domains of functioning. Most notably, he was terminated from Center of Family Support for cheating on a test. Furthermore, he failed to mention this job or any disciplinary actions at work in his pre-employment application booklet. He was arrested for grand larceny due to his alleged involvement in cashing fraudulent checks for his "friend." He was psychologically disqualified for poor credibility for the position of NYPD Police Officer, and while the candidate appealed this disqualification — it was upheld. The candidate felt that the disqualification "maybe" due to "me not remembering certain things about my arrest." Furthermore, the candidate has a questionable pattern of litigious behavior, most notably suing and receiving a $100,000 settlement from the NYPD in 2009 — and then subsequently applying to work for this organization. He was consistently and highly defensive and evasive in the interview. For instance, he was unwilling or unable to provide any details pertaining to one of his two disorderly conduct criminal court summonses. Given the high-stakes nature of the pre-employment assessment process, discrepancies and withheld derogatory information such as those highlighted above likely suggest an attempt to sanitize personal history in order to falsely appear more qualified or competent than one is. . . .
>
> In sum, this candidate is likely to be considerably impaired in performing essential job-related tasks with or without reasonable accommodations; that is, there is evidence of job-relevant psychological conditions that would be expected to interfere with effective performance in this position.
>
> Based on this psychological evaluation, and for the above-summarized reasons, this candidate is deemed unsuitable and **NOT QUALIFIED** for the position of Correction Officer . . . .

(*Id.* at 6-7). Read as a whole, the Report makes clear that Buckley's lawsuit against the NYPD was neither the motivation nor a substantial cause of the DOC's decision not to hire him as a correction officer. Put differently, when viewed in context, the passing reference to Buckley's lawsuit simply does not bear the weight that Buckley places on it.

In short, the only allegations that could plausibly support the finding of causation that is required for Buckley to state a First Amendment retaliation claim are contradicted by the very documents upon which they are based. In such situations, it is well established that "the

4

document[s] control[] and the allegation[s are] not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011) (per curiam); *accord Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016). It follows that Buckley fails to allege a First Amendment retaliation claim against either the NYPD or the DOC that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, his claims against the two agencies must be and are dismissed. And in the absence of claims against either of the agencies, Buckley has no valid municipal liability claim against the City. *See, e.g.*, *Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) (summary order) (holding that a municipal liability claim "necessarily fail[ed]" where the plaintiff "was unable to establish an underlying violation of his constitutional rights"); *accord Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (holding that where a district court had found no underlying constitutional violation, it was correct not to have addressed the municipal defendant's liability).

In light of the letters from the NYPD and the DOC, the Court is skeptical that Buckley could ever state a plausible claim of First Amendment retaliation. Nevertheless, the Court concludes that Buckley should be given one chance to amend his Complaint to allege any other facts he might have to establish causation, as Defendants only partially pressed the argument set forth above in their briefs and did not do so until their reply brief, depriving Buckley of an opportunity to respond. (*See* Docket No. 21, at 5-9). Buckley shall file any amended complaint **within thirty days** of the date of this Memorandum Opinion and Order. Buckley will not be given any further opportunity to cure the deficiencies in his claims identified herein.

The Clerk of the Court is directed to terminate Docket No. 12 and to close the case (subject to Buckley's right to file an amended complaint within thirty days).

SO ORDERED.

Dated: January 2, 2018
New York, New York

JESSE M. FURMAN
United States District Judge